CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 0 1 2006

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTONIO LUIS DIAZ-RODRIGUEZ, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 7:05-CV-00367 |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Hon. Michael F. Urbanski |
| Respondent. ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Petitioner Antonio Luis Diaz-Rodriguez ("Diaz-Rodriguez") brings this action under 28 U.S.C. § 2255, alleging that his counsel provided ineffective assistance by failing to file a notice of appeal. By Order dated December 22, 2005, the court referred this matter to the undersigned Magistrate Judge, and directed that an evidentiary hearing be held to determine whether petitioner requested that his attorney, David Heilberg ("Heilberg"), file an appeal. Such a hearing was conducted on March 30, 2006. The court gave the parties thirty (30) days from the date the hearing transcript was filed to submit additional briefs on this issue.[1] Petitioner filed his post-hearing brief on August 16, 2006.

Based on the evidentiary hearing testimony, the undersigned concludes that petitioner has met his burden of proving Heilberg's assistance was ineffective, inasmuch as counsel failed to consult with petitioner regarding the advantages and disadvantages of filing an appeal when colorable grounds for appeal appear to have existed in Diaz-Rodriguez's case. Although counsel had filed objections to a leadership enhancement in the Presentence Report, he could not explain

---

[1] The hearing transcript was filed on June 29, 2006, but counsel for petitioner stated he did not receive notice of its filing. An Order was entered on August 15, 2006 granting the parties an additional ten (10) days to file briefs.

why those objections were withdrawn and has provided inconsistent statements as to whether his client understood the withdrawal of those objections. Heilberg testified that he did not consult with petitioner about an appeal at any point after those objections were withdrawn. Given Heilberg's inability to explain the rationale for the withdrawal of the objections and his abject failure to consult with petitioner about an appeal, the undersigned is constrained to recommend that this petition be granted so that Diaz-Rodriguez may note an appeal. This recommendation is founded solely upon the troubling inconsistencies in Heilberg's various accounts of his representation of petitioner.

## I

On February 11, 2004, petitioner pled guilty to one count of conspiracy to distribute fifty (50) grams or more of crack cocaine in violation of 21 U.S.C. § 846. Transcript of Guilty Plea Hearing [hereinafter Guilty Plea Tr.] February 11, 2004, at 7-8, 23. The plea agreement, signed by petitioner, contained a waiver of his right to appeal sentencing guideline issues, which was further explained to Diaz-Rodriguez at the guilty plea hearing. Guilty Plea Tr. 11; see Plea Agreement 4-5.

The Presentence Investigation Report [hereinafter Presentence Report] prepared by a United States Probation Office recommended a three point enhancement for Diaz-Rodriguez's leadership role in the conspiracy. Docket No. 11. Diaz-Rodriguez filed objections to this enhancement, but withdrew his objections during the sentencing hearing on June 7, 2004. Transcript of Sentencing Hearing [hereinafter Sentencing Tr.] June 7, 2004, at 4. The court sentenced Diaz-Rodriguez to 235 months imprisonment. He did not appeal.

Petitioner then filed this § 2255 motion on June 14, 2005, claiming his counsel was ineffective by failing to preserve his claim under Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005), failing to inform Diaz-Rodriguez of the impact of the pending Blakely decision, failing to file a notice of appeal after being instructed to do so, and misleading petitioner into withdrawing his objections to the Presentence Report. On December 22, 2005, the court entered a Memorandum Opinion and Order granting respondent's motion to dismiss all of Diaz-Rodriguez's claims except his claim that his counsel failed to file an appeal. See Docket Nos. 11-12. The matter was referred to the undersigned for evidentiary hearing, and a hearing was held on March 20, 2006.

At the evidentiary hearing, David Heilberg, counsel in petitioner's criminal case, testified that he discussed with Diaz-Rodriguez his right to appeal prior to his waiver of that right at the guilty plea hearing. Transcript of the Evidentiary Hearing [hereinafter Evid. Hrg. Tr.] March 20, 2006, at 34. Heilberg testified the plea agreement required waiver of Diaz-Rodriguez's right to appeal and he discussed waiver with his client. Evid. Hrg. Tr. 7, 9. Heilberg insisted petitioner never asked him to file an appeal, and that he heard nothing from Diaz-Rodriguez about an appeal until he received a letter from his client, written in English,[2] in April, 2005. Evid. Hrg. Tr. 5, 10, 20, 23. Heilberg further testified that none of petitioner's family or friends ever indicated he wished to appeal, and though subsequent email correspondence seemed to suggest family members were hoping something might be done after the Booker decision was handed down, Heilberg was never hired or asked to file such an appeal. Evid. Hrg. Tr. 6, 22.

---

[2] Heilberg testified that he always spoke to Diaz-Rodriguez with the assistance of an interpreter, and that the letters he received from his client with the exception of the April, 2005 letter were written in Spanish. Evid. Hrg. Tr. 5, 20.

3

Heilberg testified that after the guilty plea hearing, he never again consulted with Diaz-Rodriguez regarding an appeal, either before or after sentencing. Evid. Hrg. Tr. 42. Counsel's failure to consult is problematic because after the guilty plea, the Presentence Report, prepared by a United States Probation Officer, recommended an enhancement for Diaz-Rodriguez's leadership role in the conspiracy. Counsel stated that he initially filed objections to the conclusion in the Presentence Report that Diaz-Rodriguez deserved this leadership role enhancement. Evid. Hrg. Tr. 25. Heilberg testified that at sentencing, Diaz-Rodriguez agreed to withdraw the objections. Evid. Hrg. Tr. 11, 15-16, 18, 25. Though he believed the objections had merit, Heilberg stated it was in his client's best interest to withdraw the objections. Evid. Hrg. Tr. 26.

Despite his assertion on the record at the sentencing hearing that his client understood and agreed to withdraw the objections, Sentencing Tr. 4, Heilberg testified at the evidentiary hearing and in his affidavit filed in support of the United States' motion to dismiss petitioner's § 2255 claim that he was not sure Diaz-Rodriguez understood the decision to withdraw. Evid. Hrg. Tr. 27. At these later times, counsel explained that he had never used the interpreter present at the sentencing hearing before, and thus, he did not have enough experience with the interpreter to know whether or not his client understood the proceedings. Evid. Hrg. Tr. 27-28. Of significance, Heilberg could not recall the reason he withdrew the objections and acknowledged that his withdrawal of the objections to the Presentence Report might have been an appealable issue. Evid. Hrg. Tr. 10, 24.

Petitioner testified briefly at the evidentiary hearing, and his testimony contains further contradictions. Diaz-Rodriguez stated that he asked Heilberg to file an appeal on the day of

4

sentencing. Evid. Hrg. Tr. 71. Petitioner explained that he wished to appeal his designation in the Presentence Report as a leader in the conspiracy. Evid. Hrg. Tr. 72. He claimed Heilberg told him he would file an appeal, but never said anything else about it. Evid. Hrg. Tr. 71. Petitioner testified that Heilberg wrote to his sister subsequent to sentencing and told her he would not file an appeal. Evid. Hrg. Tr. 71. Diaz-Rodriguez recalled neither his counsel's objections to the Presentence Report, nor the withdrawal of those objections at the sentencing hearing. Evid. Hrg. Tr. 73-74. Petitioner claimed "they weren't translating what was going on in the trial," Evid. Hrg. Tr. 74, though he acknowledged he never told the court he did not understand the proceedings. Evid. Hrg. Tr. 76. Diaz-Rodriguez further testified he never expected to cooperate with the government to reduce his sentence. Evid. Hrg. Tr. 78.

II

In Strickland v. Washington, 466 U.S. 668, 687 (1984), the Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. To establish ineffective assistance of counsel, a defendant must show first that counsel's representation fell below an objective standard of reasonableness, and second, that counsel's defective performance prejudiced defendant. Id. at 688, 694. In Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000), the Court held that this test was applicable to situations where trial counsel was allegedly ineffective by failing to file a notice of appeal. In order to establish a Sixth Amendment violation based on counsel's failure to appeal, Diaz-Rodriguez must prove that counsel was ineffective, and but for that ineffectiveness, an appeal would have been filed. United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citing Flores-Ortega, 528 U.S. 470).

5

An attorney who fails to file an appeal after his client instructs him to do so is per se ineffective. Witherspoon, 231 F.3d at 926; accord Flores-Ortega, 528 U.S. at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). If a client does not specifically instruct his attorney to note an appeal nor state explicitly that he does not wish to appeal, counsel's deficiency in failing to appeal is determined by asking whether counsel consulted with defendant about an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926.

Under Flores-Ortega, "[c]onsult" means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. If counsel has consulted with defendant, the question of deficient performance is easily answered, as counsel performs in a professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal. Id. at 478. If counsel has not consulted with defendant, the court must then ask whether counsel's failure to consult with defendant itself constitutes deficient performance. Id. at 478.

As the Court held in Flores-Ortega, "[w]e cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in Strickland and common sense." Flores-Ortega, 528 U.S. at 479. Consultation with a defendant is constitutionally imposed where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that the defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 480. Even where a defendant pleads guilty, the court must consider such factors

6

as whether the defendant received the sentence bargained for as part of the plea and whether the plea agreement waived appeal rights. Id. at 480.

While the Supreme Court refused to make the duty to consult a per se matter in Flores-Ortega, the majority noted their expectation "that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the majority of cases, that counsel had a duty to consult with the defendant about an appeal." Id. at 481; Witherspoon, 231 F.3d at 926. But see Flores-Ortega, 528 U.S. at 488 (Souter, J., dissenting in part) (finding an attorney "almost always" has a duty to consult with his client about the choice to appeal).

### III

The evidentiary hearing testimony reveals that in this case, Diaz-Rodriguez's counsel provided ineffective assistance under the standard outlined in Strickland and applied to the appeal context by the Supreme Court in Flores-Ortega. Petitioner has not presented sufficient evidence to establish that he specifically instructed Heilberg to appeal and counsel's failure to do so made his assistance per se ineffective. See Evid. Hrg. Tr. 5. However, Heilberg's assistance was nonetheless ineffective under Flores-Ortega, as he did not consult with his client about an appeal, nor did he attempt to discover his client's wishes after the sentencing hearing. Further, testimony indicates that at least one potential non-frivolous ground for appeal may have existed, and petitioner has demonstrated that but for counsel's deficient conduct, he would have appealed.

**A.  Counsel's Representation Was Ineffective Because He Failed to Consult With His Client About an Appeal.**

Heilberg plainly admitted that he did not consult with Diaz-Rodriguez about an appeal after execution of the plea agreement. When asked whether he followed Witherspoon's directive and discussed the advantages and disadvantages of filing an appeal after sentencing, Heilberg

7

replied that "I don't specifically recall going into great detail after, no." Evid. Hrg. Tr. 24.

Heilberg stated that he did not recall discussing an appeal between the guilty plea hearing and the sentencing hearing:

> The Court: Are you telling me that you have a recollection of consulting with him about an appeal [between the time of the guilty plea and sentencing]?
>
> Heilberg: Not specifically.

Evid. Hrg. Tr. 41. Inquiring about appeal discussions at an attorney-client meeting held on May 18, 2004 between the time of the guilty plea and sentencing, the court continued:

> The Court: Can you sit here, under oath, and say that on May 18th, 2004, you consulted with Mr. Diaz-Rodriguez about his right to appeal?
>
> Heilberg: Well, the letter with my objections is on the same date. I brought him the letter. So, in that context, it would have been discussed.
>
> The Court: Yes or no? Did you discuss with him the right to an appeal on May 18th, 2004?
>
> Heilberg: In the context of the letter and the same date, yes, to Mr. Goode [the United States Probation Officer].
>
> The Court: All right. Does that letter to Mr. Goode say anything about an appeal?
>
> Heilberg: No.
>
> The Court: All right. What do you remember discussing specifically about the advantages and disadvantages on taking an appeal on May 18th, 2004, if anything?
>
> Heilberg: I don't remember anything.
>
> The Court: Do you have any notes of that meeting?
>
> Heilberg: No.

8

Evid. Hrg. Tr. 41. Heilberg stated that the May 18, 2004 meeting was the last time he met with his client prior to sentencing. Evid. Hrg. Tr. 42. The court further inquired as to discussions regarding an appeal at sentencing:

> The Court: On the day of sentencing, did you have any discussions with him about the advantages and disadvantages of taking an appeal?
>
> Heilberg: Not that I recall.
>
> The Court: After the sentencing is over, did Mr. Diaz-Rodriguez turn to you and say, "appeal"?
>
> Heilberg: No.
>
> The Court: Did you discuss with him after the appeal was over or consult with him - excuse me. Let me start my question over. At the conclusion of the sentencing hearing, did you consult with Mr. Diaz-Rodriguez regarding the advantages and disadvantages of taking an appeal?
>
> Heilberg: No.
>
> The Court: At the time of the sentencing, what did you do, if anything? What efforts did you make to discover his wishes as to taking an appeal?
>
> Heilberg: I don't remember specifically going to discuss that with him.

Evid. Hrg. Tr. 42-43. In sum, counsel could not testify that he consulted with Diaz-Rodriguez about an appeal and the advantages and disadvantages thereof at any point after the plea agreement was executed. Evid. Hrg. Tr. 24, 41, 42, 43, 44, 45, 55, 56.

Heilberg did, however, state that he talked to Diaz-Rodriguez about an appeal in the context of reviewing the plea agreement prior to the guilty plea hearing. Evid. Hrg. Tr. 8, 34, 35,

9

40, 43, 45, 56. Yet counsel could not recall anything about the conversation other than the fact that he explained the paragraph of the plea agreement regarding waiver. Evid. Hrg. Tr. 43.

Petitioner's waivers of his rights to appeal and collaterally attack his sentence via his plea agreement do not preclude his claim of ineffective assistance in this § 2255 motion. The Fourth Circuit has held that a defendant cannot:

> [F]airly be said to have waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of his Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations.

United States v. Attar, 38 F.3d 727, 732 (4th Cir. 1997). In United States v. Lemaster, 403 F.3d 216, 220 n.2 (4th Cir. 2005), the Fourth Circuit noted no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights in the context of ineffective assistance claims raised in the narrow circumstances outlined in Attar. Even if Heilberg did consult with Diaz-Rodriguez about his plea agreement waivers prior to the guilty plea hearing, such consultation would not end the inquiry into his effectiveness as counsel. The alleged error in this case occurred when counsel failed to consult his client about an appeal after execution of the plea agreement. The Fourth Circuit allows petitioner to bring an ineffective assistance claim for Sixth Amendment violations that occur after a guilty plea is entered. Reviewing with Diaz-Rodriguez the waiver of his appeal rights in the plea agreement simply does not satisfy Heilberg's obligation to consult with his client about an appeal later, particularly in this case where objections to the Presentence Report were filed and for some reason withdrawn at sentencing.

10

As Heilberg plainly has admitted he did not consult with Diaz-Rodriguez regarding an appeal following the guilty plea hearing and sentencing, the question then becomes whether counsel's failure to consult with his client itself constitutes deficient performance. Flores-Ortega, 528 U.S. at 478. This issue turns on whether there were any non-frivolous grounds for appeal. See Flores-Ortega, 528 U.S. at 480.

When asked at the evidentiary hearing whether any reason existed for an appeal of Diaz-Rodriguez's sentence, Heilberg acknowledged the withdrawn objections to the Presentence Report might have been an issue for appeal.[3] Evid. Hrg. Tr. 10. At Diaz-Rodriguez's guilty plea hearing, the Assistant United States Attorney identified two other individuals, Alberto Rivera and Antonio Reynoso, as the two leaders of the conspiracy during the factual recitation to support the guilty plea. Guilty Plea Tr. 14. Yet the Presentence Report included an upward adjustment for Diaz-Rodriguez's leadership role in the conspiracy. Heilberg initially filed objections to the Presentence Report, but ultimately withdrew them for reasons he could not articulate. Evid. Hrg. Tr. 10, 11, 14-15, 16-18, 26, 33.

Heilberg's recollection of the sentencing proceeding at which he withdrew his objections to the Presentence Report contains troubling inconsistencies. Heilberg initially testified that

---

[3] Heilberg further admitted that an additional non-frivolous ground for appeal would have been the Booker decision, which is generally treated more favorably on direct appeal than on collateral attack. Evid. Hrg. Tr. 28. The Supreme Court in United States v. Booker, 543 U.S. 220 (2005), applied the Court's ruling in Blakely v. Washington, 542 U.S. 296 (2004), which forbid the enhancement of a sentence beyond the statutory maximum based on facts neither admitted by defendant nor found by a jury beyond a reasonable doubt, to the Federal Sentencing Guidelines. Had Diaz-Rodriguez timely noted an appeal in this case, and such an appeal was pending at the time Booker was decided in January of 2005, he may have successfully raised a Booker issue. As Heilberg noted, "that would have changed everything." Evid. Hrg. Tr. 29.

11

"Judge Wilson was insisting that the objections be withdrawn. I specifically remember that."

Evid. Hrg. Tr. 11. When shown a copy of the sentencing transcript, however, Heilberg recanted:

> Q. The question was it would be unusual for the court who is not a party to the proceeding to have any position at all with regard to whether an objection was put forward or withdrawn?
>
> A. I would say absolutely. I have never had that experience with Judge Wilson. To the extent I remember feeling that way or believing that that was the dynamic of the proceeding must have come from the U.S. Attorney and that's not on the record.

Evid. Hrg. Tr. 14-15. Counsel then confirmed this account of the proceedings, stating:

> I don't remember the exact details. I just remember talking about it because I assumed the government was insisting they be withdrawn for some reason and I'm not sure what that reason would be. But I remember having the discussion. There was an actual substantive discussion with the interpreter about adhering to it or waiving it and whatnot.

Evid. Hrg. Tr. 16. However, when questioned further, Heilberg again changed his testimony:

> Q: Mr. Heilberg, I really just want to clarify this. The government can't insist that you withdraw an objection, can they?
>
> A: Oh, no. I'm not suggesting that. I'm just telling you that I had certainly filed an objection and had planned to have it heard. I know my client understood that. But there was some discussion with the government about the issue.
>
> Q: But Mr. Gould did not insist that you withdraw an objection?
>
> A: I don't specifically remember that, no.

Evid. Hrg. Tr. 16. Heilberg later testified that it was possible he decided to withdraw the objections after learning the Probation Officer who prepared the Presentence Report found no

12

evidence to suggest defendant's designation as a leader in the conspiracy was erroneous. Evid. Hrg. Tr. 33. Heilberg could never provide an explanation for his withdrawal of the objections to the Presentence Report at sentencing. The best he could recall is "it was in [Diaz-Rodriguez's] interest not to rock the boat on it at that point." Evid. Hrg. Tr. 26.

Heilberg's recollection of whether Diaz-Rodriguez understood the fact that the objections were being withdrawn is equally disconcerting. During the evidentiary hearing, Heilberg at first stated he had no doubt his client understood the decision to withdraw the objections:

> Q: And again, I just want to ask you at this hearing, if after all of that, you had any doubt as to whether Mr. Diaz-Rodriguez had agreed to withdraw his objections?
>
> A: No.

Evid. Hrg. Tr. 18.[4]

Conversely, in his affidavit filed in conjunction with the government's motion to dismiss petitioner's § 2255 motion, Heilberg testified that "the undersigned counsel, because of everyone's unfamiliarity with the interpreter used then for the first time, has no confidence or assurance that Rodriguez's waiver of his objections on such short notice was knowing, voluntary or intelligent." Heilberg Aff. ¶ 5. When faced with this affidavit at the evidentiary hearing, Heilberg testified he had an uneasy feeling about the proceedings at which he withdrew the

---

[4] Yet the sentencing transcript reveals that during the colloquy in which Heilberg withdrew the objections, the interpreter interrupted the proceedings because Diaz-Rodriguez could not hear the discussion. Sentencing Tr. 4; Evid. Hrg. Tr. 18, 46-48. Heilberg testified that following this interjection by the interpreter, there was a break in the action during which he consulted with his client about the withdrawal. Evid. Hrg. Tr. 47. After this break, despite the statement from the interpreter that Diaz-Rodriguez had not been able to hear, Heilberg stated "I believe [Diaz-Rodriguez will] confirm that he agrees to withdraw those objections at this time." Sentencing Tr. 4.

13

objections. Evid. Hrg. Tr. 49. He stated he told the court on the record at sentencing that his client understood the proceedings "because everybody nodded their heads in the way that you do as you are exchanging communication." Evid. Hrg. Tr. 49. However, he acknowledged that he has a doubt as to his client's understanding because he had no prior relationship with the interpreter, and "didn't realize it until looking at the transcript today that there was an issue about whether he could hear." Evid. Hrg. Tr. 49-50.

At the evidentiary hearing, the court directly asked Heilberg about the inconsistencies in his testimony regarding his client's understanding of the withdrawn objections:

> The Court: If the assertion in paragraph five [of Heilberg's affidavit] is correct that you had no confidence or assurance that his waiver of his objections was knowing, voluntary, and intelligent, how can you tell the Court on the bottom of page four [of the sentencing transcript] that he understands that you have explained the objections and he understands it? Isn't that flattening [sic] inconsistent?
>
> Heilberg: I believe so. Absolutely. And that's just something I realize more in hindsight than at the time.

Evid. Hrg. Tr. 48. Despite the fact that Heilberg now states the withdrawal of the objections might have been a non-frivolous ground for an appeal, Evid. Hrg. Tr. 28, he remains unable to provide an explanation as to why the objections were withdrawn, and whether he believes his client understood the fact that they were being withdrawn.

On this record, the undersigned finds a rational defendant may have wanted to appeal in Diaz-Rodriguez's case.[5] The government identified two individuals as conspiracy leaders during

---

[5] In the December 22, 2005 Memorandum Opinion, the court dismissed petitioner's claim raised in his § 2255 petition that Heilberg misled him into withdrawing objections to the
(continued...)

14

the guilty plea factual recitation, and neither individual named was Diaz-Rodriguez. Nonetheless, petitioner was categorized as a leader of the conspiracy in the Presentence Report. While petitioner's counsel confirmed to the court at sentencing that his client agreed to withdraw the objections to the Presentence Report, he now testifies that he has some reason to doubt whether his client understood the proceedings. Heilberg has no recollection of exactly why the objections were withdrawn, yet he believes this might have been grounds for appeal.

As colorable non-frivolous grounds for appeal appear to have existed in Diaz-Rodriguez's case, Heilberg had a duty to consult with Diaz-Rodriguez about an appeal, and his failure to do so renders his assistance ineffective.

**B.    But For Heilberg's Ineffectiveness, Petitioner Would Have Appealed.**

Under the second prong of Strickland, a defendant must show prejudice from counsel's deficient performance. See Flores-Ortega, 528 U.S. at 481. To show prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. Petitioner has made such a showing in this case. The evidence suggests that Diaz-Rodriguez may have had grounds for appeal in terms of the withdrawn objections to the sentence enhancement for his leadership role in the conspiracy. No evidence indicates that Diaz-Rodriguez would have

---

⁵(...continued)
Presentence Report. This has no bearing on the analysis of Diaz-Rodriguez's ineffective assistance claim. Despite the fact the court indicated it would have denied any objection to the leadership enhancement, Docket No. 11, the withdrawal of the objections by counsel under circumstances which Heilberg could not articulate, and the fact that counsel now doubts whether his client even understood the proceedings at which the objections were withdrawn, give Diaz-Rodriguez non-frivolous grounds for appeal, regardless of whether those grounds would have ultimately been successful.

15

decided not to appeal after sentencing. Petitioner's sentence range under the Federal Sentencing Guidelines was increased by his designation as a leader in the conspiracy. Though the United States argued at the evidentiary hearing that the possibility of a Rule 35 motion would have obviated petitioner's desire to appeal, Diaz-Rodriguez testified that he never anticipated cooperating with the government, Evid. Hrg. Tr. 63, 78, and the government has not established that such a motion was in fact available to Diaz-Rodriguez. On this record, the undersigned finds that but for Heilberg's failure to consult with him about an appeal after sentencing, there is a reasonable probability that petitioner would have timely appealed. As such, the second prong of Strickland has been satisfied, and it is recommended that petitioner's § 2255 motion be granted so that Diaz-Rodriguez may note an appeal.

## IV

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to filed specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to petitioner and counsel of record.

**ENTER:** This 1st day of September, 2006.

_____
Michael F. Urbanski
United States Magistrate Judge

17